LAS MONJAS RACING CORPORATION, Plaintiff and Appellant, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7730.—Argued November 9, 1938.—Decided June 21, 1939.

*Leopoldo Feliú,* for appellant. *B. Fernández García, Attorney General* and *Vicente Palés Matos, Assistant Attorney General,* for appellees.

MR. JUSTICE WOLF delivered the opinion of the Court.

Section 29 of Act No. 11 of 1932 (Session Laws, p. 194) known as the Racing Act of Puerto Rico provides:

"There shall be deducted at the race tracks of Porto Rico twenty-five (25) per cent of the amounts bet in the *bancas alemanas,* after deducting the sum bet on the winning horses in the respective *bancas,* and twenty-five (25) per cent of the gross total of bets made in the pool, subscription funds or mutuels. The gross total derived from said deductions shall be distributed as follows: eighty-five (85) per cent for the corporation operating the race track and fifteen (15) per cent for the funds of the Insular Racing Commission."

Despite the fact that the Racing Act limited to 25 per cent the discount that should be deducted from the lump sum of the bets made in the subscription fund, the Insular Racing Commission, by a rule, authorized the hippodromes to deduct from such lump sum 33⅓ per cent, which the selling agents received from the tickets sold. From the remaining 66⅔ per cent, not from 100 per cent as the act orders, the 25 per cent—to which the Section 29, supra, refers—is deducted, so that the persons winning in the subscription fund would receive 75 per cent of the 66⅔ per cent of the lump amount of the subscription fund.

The Internal Revenue Law in Section 16 *a* thereof (Par. 3, Act 11, Third Special Session Laws of 1932, p. 50) provides that anybody who wins a pool or subscription fund should pay an excise tax of 10 per cent on the whole amount received which the hippodrome should retain and pay into the treasury.

The complainant, who was the owner of the hippodrome Las Monjas Racing Corporation, had two races on the dates mentioned in the two causes of action of the complaint and on paying the excise tax before-mentioned, attempted to pay it only upon the amount which was received by the winners after the deduction of the 33⅓ per cent which had been authorized by the Racing Commission and not on the 75 per cent remaining after making the deduction set forth by Section 29. The Treasurer did not accept the payment offered by the complainant and demanded that the excise tax should be upon 75 per cent of the total of the tickets. Las Monjas Racing Corporation paid under protest and brought this suit.

According to the court below the controversy was reduced to the question of whether the order or rule of the Racing Commission was valid; that if such rule was ultra vires and if the commission exceeded its powers in authorizing such a discount, then the plaintiff was bound to pay the lump sum less the discount of 25 per cent. The powers of the Insular Racing Commission, said the court, can be found in Section 5 of the Racing Act of Puerto Rico as follows:

"Section 5.—The Insular Racing Commission is hereby empowered to regulate all matters concerning the sport of racing, and for that purpose it shall have power to prescribe the rules and conditions by which the holding of horse races in Porto Rico is to be governed; to regulate all matters connected with the manner in which bets are to be made in the *bancas alemanas* and pools, and by regulation to prescribe the requirements that should be fulfilled by persons wishing to obtain, and who obtain, from the Commission,

race-track licenses, and licenses as horse owners, jockeys, trainers, or stablemen.

"The Insular Racing Commission, in its investigation and acts, shall follow the procedure prescribed by law for courts of justice in the transaction and dispatch of their business.

"The Insular Racing Commission, in the exercise of their duties, and the members of the Commission when they act in representation thereof, are authorized to summon witnesses, administer oaths, take evidence, and compel the appearance of witnesses and the presentation of books, letters, documents, papers, files, and all other data that may be considered essential to a complete knowledge of the matter under investigation in regard to the sport of racing.

"All these powers shall be prescribed in regulations which shall be approved by the Governor of Porto Rico. After the latter has given his approval, said regulations shall have binding force. The Legislature reserves the power to revise and revoke such regulations, wholly or partly, whenever it may deem advisable."

The court below saw nothing in this rule which would authorize the Racing Commission to go against the specific mention in Section 29 of the Racing Act. The case was decided on demurrer and the court held that the complaint was not capable of being amended and, therefore, that the complaint should be dismissed.

The appellant, after stating the facts, assigns four errors as follows:

"1.—The said court erred in concluding and adjudging that the amounts which represented, in each subscription fund pool held, 1/3 of the nominal value of the tickets sold in each case were subject to the payment of the excise tax imposed by Section 16 a of the Excise Tax Act then in force.

"2.—The said court likewise erred in concluding and adjuging that the rules and regulations approved by the Racing Commission and the Governor to control said subscription fund pools are void.

"3.—The lower court likewise erred in failing to conclude and adjudge that the appellant, in any case, was not and is not now a taxpayer that owed such excise tax and that for such reason the appellee can not either legally claim the same from it or force it to make payment.

"4.—Said court likewise erred in finding for the defendant and in taxing the costs against the plaintiff."

144

■■ Making the necessary inferences, the argument of the appellant is, in substance, that the only amount that may be taxed is the amount that actually is distributable by the hippodromes to the winners of the subscription fund. The idea is that the tax sought to be recovered by the Treasurer could only be imposed on the amount actually distributable by each of said hippodromes. Therefore, if 25 per cent were to be deducted, the amount distributable to the winners of the subscription fund would be 75 per cent and if the amount of 33⅓ per cent were first to be deducted, the amount to be distributed to the winners would be 75 per cent of 66⅔ per cent. Stress is laid again and again on the fact that the hippodromes do not receive 75 per cent of the total amount paid by purchasers of tickets at the rate of $1.

We agree with the court below that the Insular Racing Commission could not do anything which would subvert the purposes of Section 29 of Act No. 11 of 1932. The appellant, however, insists not only that the Insular Racing Commission has not exceeded its powers, but also that the tax, in any event, is only imposed on the amount received by the respective hippodromes.

As in other cases the public might waive a right to receive the 75 per cent fixed by Section 29, supra. *Modus et conventio vincunt legem.*

In the instant case, however, there was an existing act which said that 10 per cent of the amount paid to the winners should be retained by each of the hippodromes. Therefore, when the Legislature said in effect that 75 per cent of the returns from the sale of tickets should be paid to the winners, it meant what it said and must necessarily have had in mind that the 10 per cent should be charged on the 75 per cent that was left after deducting the said 25 per cent. The intention of the Legislature evidently was, taking the contents of the two acts together, namely Act 11 of 1932 (p. 194) and Act 11, Third Special Session Laws of 1932 (p. 50),

that the hippodromes should retain 10 per cent of 75 per cent. Equity regards that as done which ought to have been done.

The judgment should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.